## Case No. 16,733.

UNITED STATES v. WILSON.

[1 Cranch, C. C. 104.] ¹

Circuit Court. District of Columbia. Dec. Term, 1802.

LARCENY OF BANK CHECK—EVIDENCE—VARIANCE.

1. Upon an indictment for stealing a check upon a bank it is not necessary to produce the check itself, in order to admit parol evidence that it was presented at the bank.

2. Quære. whether a check drawn upon "the office of discount and deposit, Washington," be good evidence to support an averment of a check drawn on "the Bank of the United States," the corporate name being the "President, Directors, and Company of the Bank of the United States."

Indictment for stealing a check on the office of discount and deposit, Washington. from a seaman.

P. B. Key, for prisoner. objected that the United States ought not to be suffered to give the testimony of the officer of the bank respecting the prisoner's going to the bank with the check, unless they produced the check itself, and proved the handwriting of the drawer.

THE COURT overruled the objection, unless the prisoner can show that the check is in the possession or power of the United States.

The indictment stated the check to be "a check drawn on the Bank of the United States, and payable at the office of discount and deposit, Washington." The check proved was in this form—"Office of Discount and

¹ [Reported by Hon. William Cranch, Chief Judge.]

Deposit, Washington, pay to —— or bearer —— dollars."

Mr. Key, for the prisoner, contended that the evidence did not support the averment in the indictment respecting the check. That the variance between the check proved and that alleged in the indictment was material; that the indictment ought to have set forth the check in hæc verba, and that there was no such body corporate as the Bank of the United States. The corporate name being the "President, Directors and Company of the Bank of the United States." 1 Stat. 192.

Mr. Mason, for the United States. By the act of Maryland, 1797, c. 96, § 1, it is enacted "that if any person within this state shall steal or take by robbery, any check or checks, order or orders, drawn on any bank established, or that may be established under a charter from the government of the United States, or of any particular state, it shall be deemed and construed to be felony of the same nature, and in the same degree, as if the offender, or offenders had stolen or taken by robbery any other goods of like value with the money due on such check," &c. And the act of congress establishing the bank (1 Stat. 191) enacts "that a Bank of the United States be established." Every check drawn on the office of discount and deposit is a check on the Bank of the United States. The branch is only an office of that bank. It was necessary to set forth the check according to its legal operation, and not according to its precise form. If a note of the Bank of the United States be refused payment at a branch, the suit must be against the Bank of the United States.

Mr. Key, in reply. If the check is not set forth in hæc verba, it ought, at least, to be stated according to its legal operation, which is not a check on the Bank of the United States, for there is no such corporate body, but on the president, directors and company of the Bank of the United States.

## Case No. 16,734.

UNITED STATES v. WILSON.

[Hoff. Dec. 63.]

District Court, N. D. California. April 11, 1864.

MEXICAN LAND GRANT—DETERMINATION OF BOUNDARIES.

[In determining the limits of the tract from the map, regard is to be had to the natural objects there laid down as bounding the tract,

rather than to the distance of such objects from other natural objects as shown by the scale.]

[This was a claim by Juan Wilson, the real party in interest being William Hood, for Guilicos, four square leagues, in Sonoma county, granted November 20, 1847, by Juan B. Alvarado, to Juan Wilson. Claim filed February 10, 1852, confirmed by the commission December 27, 1853, and by the district court March 3, 1856. Case No. 16,735.]

HOFFMAN, District Judge: In the petition addressed by the claimant to the governor, the land solicited is described as "the place named Guilicos, to the extent indicated on the map which duly accompanies the petition." The grant concedes to the petitioner the piece of land known by the name of Guilicos, within the boundaries shown by the map which duly accompanies the petition. The fourth condition is as follows: "The land granted is purely that which is expressed in the petition of the party interested, and is expressed in the diseño annexed to these proceedings. The judge who shall give the possession shall inform the government of the number of square leagues it may contain."

In the opinion of the board it is observed: "The principal question in this case relates to the description and boundaries of the premises. The grant contains no words of description of the land other than its name, and a reference to the grantee's petition and the map which accompanied it. The land granted is that therein described. In the petition the land is described as that named Guilicos, situated in the frontiers to the north of San Francisco, to the extent that is designated on the map. The map shows the exterior limits of the land by lines drawn thereon to indicate the four sides of the premises granted, and by a scale which is made a part of the map, the premises appear to be about one league in width, and about three leagues and one-third in length. The land is represented on the map as a valley, extending from east to west, and the premises are bounded on the north and south by the hills enclosing the valley, and on the east and west by lines cutting across the valley and running due north and south. The testimony of the witness Peabody shows that this description of the land known as Guilicos is, in its general terms, correct, and there would seem to be no difficulty in recognizing as defined with sufficient certainty the north and south lines. There is more difficulty in determining the precise location of the lines running across the valley, and forming the east and west lines of the premises. Without the aid of the scale on the map, there would seem to be nothing to fix their position. They are natural objects laid down on the map. The junction of two streams and a lake of considerable magnitude, which would seem to be points easily found, and the relative position of Guilicos in reference to these objects are exhibited on the map. Their distance from them, however, can be ascertained only from the general features of the map and an application of the scale of distances to it. By doing this, however, there would seem to be no difficulty in approximating at least a correct description of the exterior boundaries. We must either adopt this course or reject altogether the claim. The map is made a part of the grant. In fact it contains the only description of the premises which are granted by name, and by reference to the map for metes and bounds. We should be unwilling, unless imperative necessity required it, to reject a claim, otherwise meritorious, for this reason; and we think it better to rely on such proof as the map, aided by other testimony as to locality and description, gives, although not so definite as we could wish them, to reject altogether the grant, on the ground of indefiniteness of description incorporated in the grant by reference to the map."

It will be observed from the foregoing extract that the only description of the land granted is that contained in or to be derived from the diseño. Some testimony has been taken to show what were the boundaries popularly assigned to the tract called Guilicos. But none of the witnesses pretend to have known it before the grant was made, or to assert that at that time it had any determinate limits. The governor himself gives precision to the grant by describing the land named Guilicos as purely that delineated on the diseño. It is to the diseño alone, therefore, that, under the decree of confirmation, as well as by the terms of the grant, we must look both to ascertain the limits and quantity of the land granted. Recurring, then, to the diseño, we find it in some particulars inconsistent. If, in ascertaining the tract of land delineated, we are guarded by the natural objects represented on the diseño, its limits can, without much difficulty, be ascertained. But if, on the other hand, the eastern and western boundaries are to be established at the distances indicated by the scale on the map, we shall include a considerable tract not represented on the diseño.

It is observed in the opinion of the board above quoted that, without the aid of the scale on the map, there seems to be nothing to fix the position of the eastern and western lines. But this observation is inaccurate. A little to the east of the centre of the tract a small oval object is represented on the diseño from which issues a stream, flowing in nearly an easterly direction. This object is evidently identical with the laguna of the official survey, from which also issues a brook running in an easterly direction. The easterly boundary of the diseño is drawn at right angles to this stream, and evidently was intended to cut it at a

point where its course still continues easterly. But it appears from the official survey, that the stream further down makes a marked deflection, and, running in a course not far from southerly, flows into the Sonoma creek. The official survey has established the eastern boundary by its distance as indicated on the scale of the diseño, from the laguna. But it has thereby included in the tract the whole of the land in the stream just referred to, and has fixed the eastern portion of the southern boundary the Sonoma creek, while the Calaberas creek is taken for the eastern boundary, neither of which streams are represented on the diseño. A glance at the diseño shows that the dotted line, which indicates the eastern boundary, was intended to cross the stream flowing from the laguna. For that stream is represented as running in an easterly direction, and passing through the dotted line at some distance from its southern extremity. In the official survey the stream does not even approach the eastern boundary, and the latter is fixed at the Calaberas creek, which it follows to its junction with the Sonoma creek, which latter is thus made to form the eastern portion of the southern boundary.

The question, then, arises, are we in fixing the location of the eastern line, to be governed exclusively by the correct distance, as shown on the scale? Or is the line to be drawn at the place indicated by its position on the diseño relative to the natural objects thereon represented. In determining the comparative dignity of these two inconsistent calls, we naturally assign the greater importance to that which we may suppose to have been most in the mind of the governor, and concerning which he was the least likely to have been mistaken. The distances, as indicated on the scales of the diseños which accompanied the petitions for land, were almost invariably loose conjectural estimates, and in a great majority of cases extremely inaccurate. Where the applicant indicated a brook, a sierra, or a grove, as constituting his limit in a particular direction, and delineated it on his diseño, it cannot be doubted that the governor, when granting the "tract marked out on the map," must have meant to adopt the natural object so laid down, notwithstanding that its distance from some other natural object also represented, might be greater or less than that shown by the scale.

The petitioner, by whom the diseño was presented, and who was acquainted with the land, could not have been mistaken as to the object which he designated as a boundary; but he might well have made an inaccurate guess as to its distance from some other object unrepresented on his map. Where land was freely bestowed for the asking, in tracts many leagues in extent, it cannot be supposed that quantity or extent could have been the paramount consideration in the mind of the applicant; but rather that he desired to obtain a specific piece of land with established boundaries, the precise extent of which he could only guess at, and as to which he was to a certain degree indifferent. The common-law rule, therefore, which prefers natural or artificial monuments to course and distance, when the calls are repugnant, applies with additional force to a system of granting like that pursued by the former government of this country. If then, a specific stream, grove or sierra, if designated on the diseño, would be adopted, as the boundary, notwithstanding that its distance from another object might be greater or less than that indicated by the scale, I see no reason why the same rule should not be observed in a case like the present, where the boundary, though not itself a natural object, can be determined by reference to natural objects. We determine its position with reference to those objects in this case, not by drawing it at the distance from the laguna, or the junction of the streams, indicated by the scale, but in such manner as to cross the stream it is represented as crossing at the point in its course represented on the diseño, whatever be the distance of that point from the laguna or the junction. But more especially must we do so when we find that if drawn at the distance indicated, the line will not cross the stream at all, and a portion of the southern and the whole eastern boundary will be fixed at two great natural objects (the Calaberas and the Sonoma creeks), which are not represented on the diseño, the situation of which must have been well known to the petitioner, and which he surely would not have omitted if he had intended to adopt them as boundaries.

It will be observed that, from the language of the fourth condition the governor seems to have been ignorant of the extent of the land he was granting. In that condition it is stated, that "the land granted is purely that expressed in the petition, and exhibited on the plan which goes with the expediente. The judge who shall give the possession will inform the government of the number of square leagues it may contain." But the scale of the diseño showed to the governor that the tract solicited was of precisely the extent of $3\frac{1}{2}$ leagues in length, and one league in breadth. Had he intended, therefore, to grant the quantity of land indicated by the scale, there could have been no reason why that quantity should not have been expressed. But on the contrary, he grants the land "marked out on the diseño," and carefully avoiding all mention of quantity, directs the officer to inform him how many leagues the tract contains. A direction clearly unnecessary, if the eastern and western lines were to be drawn as indicated by the scale, at exactly the distance of three leagues and one-third from each other; while the northern and southern lines were in like manner to be fixed exactly one league apart. But the official survey does not even seem to have pursued the theory on which the eastern line has been located. If distance as in-

dicated by the scale is to control, there would appear to be no reason why the width of the tract should be allowed to exceed one league; nor why the northern and southern lines should be located at greater distances to the north and south respectively from the junction of the streams, the laguna, and other natural objects than those indicated by the scale on the diseño. But the survey following the call of the diseño for the sierras, and disregarding the call for width as shown by the scale, has made the distance of the northern from the southern boundary, throughout nearly the whole extent of the tract, to exceed a league by more than one-third. The distance of those lines from the natural objects above referred to, as indicated by the scale, has in like manner been entirely disregarded. But it is plain that in this respect the survey was right, and that the tract granted was intended to be bounded on the north and south by the parallel ranges of hills which inclose the valley. By parity of reasoning the length of the tract should be determined by drawing the eastern line across the valley at the point but not at the distance indicated by the diseño. The western line seems to be drawn not only at the point but at the distance from the junction of the creeks indicated on the diseño. It is therefore correctly located on either theory of location. It appears also to have been fixed by the authority of the alcalde of the district on the occasion of a dispute between the present claimant and one of the colindantes. The location of neither the northern or southern lines is objected to on the part of the United States. It seems to be admitted that the sierras adopted as boundaries are those represented on the diseño, although the width of the tract is, as before stated, considerably greater than that indicated by the scale on the diseño. The eastern boundary alone is in dispute.

For the reasons above given I am of opinion, that the boundary should be drawn at right angles to the general course of the valley, and so as to cross the stream issuing from the laguna as near as may be at the point indicated on the diseño as the point of intersection. That point to be taken as far to the east as it is possible to go before reaching the bend or deflection to south herein before referred to.